**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRAVON HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-5146 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| OFFICER J. EVANS, SHERIFF | ) | |
| THOMAS DART, and COOK | ) | |
| COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff Travon Howard ("Plaintiff") brings this Section 1983 suit against Defendants Officer J. Evans, in his individual capacity ("Officer Evans"), Thomas Dart, in his official capacity as Sheriff of Cook County, Illinois ("Sheriff Dart"), and Cook County, Illinois ("County") for deliberate indifference and inadequate medical treatment in violation of the Fourteenth Amendment to the United States Constitution. Currently before the Court are Sheriff Dart's [19] and the County's [35] motions to dismiss the governing amended complaint ("Complaint") for failure to state a claim. For the following reasons, both motions, [19] and [35], are denied. The Court directs the parties to file an updated joint status report on the progress of discovery, anticipated additional discovery, and any settlement prospects no later than October 16, 2020.

**STATEMENT**

**I.    Background**

The following facts are taken from Plaintiff's Complaint [11] and assumed to be true for purposes of Defendants' motions to dismiss. Plaintiff has been a pre-trial detainee at the Cook County Jail ("Jail") since May 2017. On August 2, 2017, Plaintiff's cell mate, Johnathan Reza ("Reza"), with whom Plaintiff had been living without incident until that time, threatened Plaintiff that if he did not pay him $50 every week, he would anally and orally rape him. Reza then brandished a homemade metal shank, approximately six inches in length with a pointed end, that he had made from a piece of scrap metal and asked Plaintiff if he "thought this was a game." [11] at 3.

About 30 minutes after this confrontation, Officer Evans came by for a walk-through of Plaintiff's tier of the Jail. Plaintiff got Officer Evans's attention and told him that Reza had threatened to sexually assault Plaintiff if he did not pay him $50 every week. Visibly shaken by Reza's threat, Plaintiff said that he was afraid for his life. Officer Evans allegedly laughed at

Plaintiff's plea for help and told Plaintiff that he had better do what Reza said. Officer Evans also allegedly added that he did not want to have to do any paperwork that night.

The Complaint alleges that, approximately two minutes after Officer Evans left, Reza attacked Plaintiff, stabbing him in the face with the metal shank, narrowly missing his eye, and then kicked Plaintiff repeatedly while he tried to take cover on the floor under the bottom bunk bed. Plaintiff screamed for help from Officer Evans, who was within earshot of their cell. But Evans did not return for another 30 minutes, when he was completing the next round of walk-throughs. Upon Officer Evans' return, Reza called him over and said that Plaintiff needed help because they had had an altercation. Plaintiff was bleeding profusely from the stab wound to his face. Officer Evans removed Reza from the cell and came back for Plaintiff approximately fifteen minutes later. Officer Evans complained that now he was going to have to do paperwork, and that the security camera would have caught Plaintiff screaming and waving his hands for Evans. Evans escorted Plaintiff downstairs for medical evaluation, where his injuries were documented. Plaintiff was then transported to Cermak Medical Center ("Cermak") where his shank wound was cleaned and stitched.[1]

According to the Complaint, Plaintiff continues to this day to suffer from the physical and psychological effects of the attack. Plaintiff has filled out an estimated 50 medical request forms seeking treatment for blurred vision in his right eye resulting from the stab wound, for pain and numbness in his right hand due to injuries suffered in trying to fend off Reza's attack, and for recurring nightmares. Plaintiff deposited the medical request forms in the designated box for those forms or gave them directly to correctional officers. His concerns have been completely ignored, except for one time he was allowed to see a psychologist about recurring nightmares of the assault. Plaintiff has not received any treatment for his vision issues or the injury to his hand.

The Complaint alleges on information and belief that Cermak has been grossly understaffed, as evidenced by the fact that until June 2018 the hospital operated under oversight from the federal government pursuant to a consent decree. The consent decree, signed by Sheriff Dart, followed an investigation that found inadequate care and understaffing at Cermak. The Complaint further alleges that the fact that Plaintiff has attempted to seek medical treatment to no avail dozens of times over the last two years is indicative of a widespread pattern and practice by which detainees at the Jail are denied medical care for objectively serious conditions. Sheriff Dart and Cook County allegedly were aware of this practice and Cermak's understaffing problems as of 2017, when Plaintiff began seeking treatment.

Count I of the Complaint is for deliberate indifference against Officer Evans; Count I is not at issue here. Count II of the Complaint is against Sheriff Dart in his official capacity and against the County. Count II alleges: "Plaintiff has been unable to receive medical attention for his objectively serious health concerns, in violation of his rights under the Fourteenth Amendment to the United States Constitution, as a result of understaffing and standard practices at the Cook County Jail for which Defendants Thomas Dart and Cook County are responsible. That understaffing and standard practices result in the denial of medical care to detainees, even for

---

[1] "There is … a close relationship between the Jail and Cermak. The Cermak facilities are physically located within the Jail, and Jail personnel are responsible for delivering patients to Cermak for care." *Daniel v. Cook County*, 833 F.3d 728, 737 (7th Cir. 2016).

serious injuries like those suffered by Plaintiff. As a direct and proximate cause of Defendants' objectively unreasonable inaction, Plaintiff endures severe and continued pain and suffering." [11] at 6.

## II. Legal Standard

Defendants' Rule 12(b)(6) motion challenges the legal sufficiency of the Complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), the Complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *NewSpin Sports, LLC v. Arrow Electronics, Inc*., 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court reads the Complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## III. Analysis

In their nearly identical motions to dismiss, Sheriff Dart and the County argue that Count II of the Complaint is time-barred and, in the alternative, fails to state a plausible *Monell* claim for medical indifference. As to timeliness, Dart and the County maintain that Plaintiff's medical indifference claim accrued when Plaintiff was attacked by his cellmate on August 2, 2017 and, therefore, he was required by the applicable two-year statute of limitations to assert his medical indifference claim by August 2, 2019. Plaintiff filed his first amended complaint on October 25, 2019, which Defendants claim was too late.

Plaintiff's claim is timely, regardless of the applicability of any tolling doctrines or "relation back" under Federal Rule of Civil Procedure 15. Plaintiff's medical indifference claim did not accrue on August 2, 2017, because Plaintiff alleges "a continuing violation for accrual purposes." *Wilson v. Wexford Health Sources, Inc*., 932 F.3d 513, 517 (7th Cir. 2019). That is, "[t]he alleged wrong—the refusal to provide medical care—"continued for as long as the defendants had the power to do something about [the plaintiff's] condition." *Id*. at 517-18. As far as the Court can ascertain from the Complaint, Sheriff's Dart's and the County's refusal to provide medical care for Plaintiff's eye and hand continued at least until the Complaint was filed. "Every day" that Defendants allegedly "prolonged [Plaintiff's] agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew." *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001).

The Court next considers whether Plaintiff states a *Monell* claim for medical indifference. To establish a *Monell* violation, a plaintiff "must have evidence of '(1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a

3

known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury.'" *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020) (quoting *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020)). "In determining whether a plaintiff has sufficiently pled a widespread practice in a *Monell* claim, the Court looks to the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018). More generally, the Seventh Circuit has cautioned that "federal courts may not apply a 'heightened pleading standard—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under ... 42 U.S.C.§ 1983.'" *Hill v. Cook County*, - F. Supp. 3d -, 2020 WL 2836773, at *13 (N.D. Ill. May 31, 2020) (quoting *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016)).

Here, Plaintiff alleges on information and belief that Cermak has been grossly understaffed, resulting in Plaintiff's approximately 50 requests for medical treatment for his eye and hand being completely ignored for two years. To this day, Plaintiff alleges, his vision is blurred and he experiences pain and numbness in his injured hand. In addition to Plaintiff's own experience, the Complaint points to evidence that "until June 2018 the hospital operated under oversight from the federal government pursuant to a consent decree," which resulted from "an investigation that found inadequate care and understaffing at Cermak Medical Center." [11] at 5.

Defendants argue that these allegations are insufficient to support a *Monell* claim because Plaintiff's references to his own grievances and an expired consent decree do not show that a policy, practice or custom caused any alleged deprivation. Defendants contend that, under *Bridges v. Dart*, 950 F.3d 476 (7th Cir. 2020), "and controlling precedent, Plaintiff's allegations about his own condition are insufficient to make out a widespread practice claim under *Monell*," [33] at 7.

"To prove an official policy, custom, or practice within the meaning of *Monell*, [Plaintiff] must show more than the deficiencies specific to his own experience, of course." *Daniel*, 833 F.3d at 734. However, *Bridges* and the other cases on which Defendants rely, see [33] at 8, were all decided at summary judgment—not on a motion to dismiss, which is the procedural posture here. At summary judgment, evidence of just a few isolated incidents of constitutional violations are likely to be found insufficient to support a *Monell* claim based on a widespread unconstitutional practice. See *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002); *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008); *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005). But Defendants have not cited any precedent that requires a plaintiff to identify other specific constitutional violations to state a *Monell* claim, where the complaint's allegations otherwise plausibly support an inference that the defendant has a widespread practice about which decisionmakers are aware. In fact, even at the summary judgment stage, a plaintiff "need not present evidence that [the defendant's] alleged systemic failings"—including specifically "systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system"—"affected other specific inmates." *Daniel v. Cook County*, 833 F.3d 728, 735 (7th Cir. 2016) (genuine issue of material fact existed as to whether pretrial detainee's injury resulted from systemic deficiencies in county jail's medical scheduling and record keeping, precluding summary judgment in detainee's § 1983 action against sheriff's office, sheriff,

4

and county, alleging deliberate indifference to his serious medical needs in violation of Fourteenth Amendment due process after he suffered multiple fractures in his wrist).

Defendants also argue that the Complaint's references to the consent decree that Cermak was operating under when Plaintiff began seeking medical treatment are insufficient to support a *Monell* claim, because certain other documents show that Cermak had at least arguably improved its performance by that time. However, Defendants arguments are not ones that can be resolved on a motion to dismiss. For purposes of the Court's analysis here, it is sufficient that Plaintiff has alleged that Cermak was under a consent decree until June 2018 for inadequate care and staffing, and that Plaintiff personally tried to obtain care approximately 50 times but was unsuccessful. The Court must take as true Plaintiff's allegations that he filed his medical request forms by depositing them in the designated box or giving them directly to Jail guards, yet was never scheduled to see a doctor about his blurry vision or the injury to his hand. One plausible inference from these facts is that Plaintiff's requests for medical treatment were ignored for so long due to systemic understaffing problems at Cermak.

Another plausible inference from the Complaint's allegations is that the Jail's process for requesting medical treatment suffers from systemic failures that result in prisoners with serious medical needs being denied care. As the Seventh Circuit explained in *Daniel,* "[a] jail or prison must have effective channels for inmates to communicate their health care needs." 883 F.3d at 736. "If a grievance system" or other request system "is part of a jail's or prison's system for communicating and responding to health care requests, and if the system fails in a way that causes a deprivation of needed health care, then the problem with the grievance system" or other system "may be an important part of the plaintiff's case for deliberate indifference to his health care needs." *Id*. at 737; see also *Awalt v. Marketti*, 74 F. Supp. 3d 909, 935-36 (N.D. Ill. 2014) (denying government's motion for summary judgment for deprivation of health care resulting in death where plaintiff offered evidence that Cook County Jail personnel routinely ignored medical grievances and failed to implement a grievance mechanism). The particular cause or causes of Plaintiff's alleged denial of care can be explored in discovery. For now, Plaintiff has alleged enough to state a plausible *Monell* claim.

## CONCLUSION

For these reasons, Sheriff Dart's motion to dismiss [19] and the County's motion to dismiss [35] are both denied.

Dated: September 21, 2020

_____
Robert M. Dow, Jr.
United States District Judge

5