IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRAVON HOWARD (#2017-0520179), | ) |
| | ) |
| Plaintiff, | ) Case No. 19-cv-5146 |
| | ) |
| v. | ) Judge Robert M. Dow, Jr. |
| | ) |
| OFFICER J. EVANS, in his individual capacity; THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois; and COOK COUNTY, ILLINOIS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This is a prisoner civil rights action brought pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment by Plaintiff Travon Howard against Officer J. Evans (#15376), in his individual capacity, for alleged deliberate indifference (Count I), and against the Sheriff of Cook County, Thomas Dart, in his official capacity, as well as Cook County, Illinois, for alleged inadequate medical treatment (Count II), concerning injuries suffered by Plaintiff at the hands of his cellmate on August 2, 2017. Currently before the Court is Defendant Evans' Motion for Summary Judgment [59], filed pursuant to *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008), as to Count I, only. For the reasons stated below, Defendant's Motion [59] is granted for failure to exhaust his administrative remedies, pursuant to 42 U.S.C. § 1997e(a). See *Pavey*, 544 F.3d at 742 ("issue of exhaustion should be resolved at the start of the case, before pretrial discovery begins."). A final judgment as to the claims against Defendant Evans will be entered pursuant to Fed. R. Civ. P. 54(b) and he will be terminated as a party to this action. The remaining Defendants

are instructed to file a Status Report regarding the progress of this case with respect to Count II of the Amended Complaint by April 15, 2022.

**I.     Introduction**

Before a prisoner can bring a civil rights action under § 1983, the Prison Litigation Reform act (PLRA) requires exhaustion of any available administrative remedies. See 42 U.S.C. § 1997e(a); see also *Pavey*, 544 F.3d at 740. There are no exceptions to this mandatory, threshold requirement, see *Boyd v. Pfister*, No. 18-cv-3275, 2020 WL 6381367 (N.D. Ill. Oct. 30, 2020) (citing and quoting *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016)), and all "[u]nexhausted claims are procedurally barred from consideration." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). To exhaust administrative remedies, a prisoner with a civil complaint must first file a grievance within the prison's own grievance system and "follow the specific procedures laid out in the prison's administrative rules from start to finish." See, *e.g., Boyd*, 2020 WL 6381367 at * 6 (citing *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) ("A prisoner must comply with the specific procedures and deadlines established by the prison's policy.").

A motion for summary judgment filed pursuant to *Pavey*, like the one filed in this case by Defendant Evans, essentially asserts an affirmative defense to suit based on documentary evidence—a paper alternative to a "*Pavey* hearing," see *Pavey*, 544 F.3d at 742, through which a court resolves this threshold issue without a hearing when the relevant facts are undisputed. See *Nesbitt v. Villanueva*, 2011 WL 737617, at *3 (N.D. Ill. 2011). As an affirmative defense, Defendant Evans must carry the burden of establishing it to win. *Jones v. Bock*, 549 U.S. 199, 219 (2007). As the moving party on a motion for summary judgment, Evans must also show that there are no genuine issues of material fact from which a reasonable inference may be drawn in favor of Plaintiff on the issue of administrative exhaustion. Thus, although the allegations of the Amended

Complaint frame the legal issue, the parties' evidentiary showings in the Local Rule 56.1 Statements will govern the decision for this Rule 56 Motion for Summary Judgment [59].

The threshold issue raised by the pending motion is whether Plaintiff exhausted his administrative remedies available through the prison grievance system, as required by the PLRA, for the claim he now asserts against Defendant Evans in Count I, as amended [11]. The material and genuinely undisputed facts demonstrate that Plaintiff did not do so.

    A.    *Count I's Allegations*

In Count I of the Amended Complaint, Plaintiff sues Defendant Evans in his individual capacity. According to Plaintiff, on the night of August 2, 2017, Officer Evans, a correctional officer employed by the Cook County Sheriff, was on duty and acting within the scope of his employment at the prison where Plaintiff was confined. As pled, Officer Evans "laughed and walked away when Mr. Howard told him that he was being threatened by his cellmate." [11, ¶ 2]. As recounted by Plaintiff: "[m]oments after Officer Evans walked away, [Plaintiff's] cellmate viciously attacked him, stabbing him below the right eye and kicking him repeatedly while he cowered under the bed." [*Id.*, ¶ 2]. Plaintiff called for help, but no officers came to his aid, including Defendant Evans, who did not return until he was completing his next round of walk-throughs, nearly 30 minutes after the attack. [*Id.*] At this time, Plaintiff was bleeding profusely from his stab wound. [*Id.*, at ¶15]. Plaintiff again called out to Defendant Evans, who stopped to investigate and prioritized removing Reza from the cell, before returning 15 minutes later to escort Plaintiff downstairs for medical evaluation. [*Id.*, at ¶¶ 16-17]. By ignoring the reported threat (*e.g.*, "objectively unreasonable inaction"), Plaintiff claims that Officer Evans was deliberately indifferent and exposed him to "a substantial risk to his health and safety" [*Id.*, ¶ 24] resulting in injuries [Id. ¶¶ 25-26] at the hands of his cellmate.

Also relevant to Defendant Evans' Motion for Summary Judgment are the Court's prior rulings with regard to Count II, because Count II involves a claim that Plaintiff also filed as a grievance and, when denied, appealed to exhaust his administrative remedies. Count II alleges that Defendants Dart and Cook County are liable because Plaintiff was unable to receive medical attention for his objectively serious health concerns as a result of understaffing and standard practices at the Cook County Jail, for which Defendants Dart and Cook County are responsible [11, ¶¶ 19, 27-28].

    B.    *Local Rule 56.1 Statement of Material & Undisputed Facts*[1]

At all relevant times, the CCDOC's Inmate Grievance Policy and Procedure was in effect. [73, ¶ 22]. The Grievance Policy required inmates to submit a completed Inmate Grievance within 15 days of the grievable offense, and to appeal the response within 15 days of receipt in order to exhaust administrative remedies [*Id.,* ¶ 23]. The 15-day time limitation for inmates to file grievances and appeals was, at all relevant times, part of the CCDOC grievance procedure, as stated on the Inmate Grievance Forms, CCDOC Response Forms, and in the CCDOC Inmate Handbook [*Id.,* ¶¶ 24-25], a copy of which Plaintiff received upon entry to CCDOC [*Id.,* ¶ 28].

Prior to the August 2nd incident, Plaintiff utilized the Grievance Policy at least 11 times and appealed 4 of the final grievance determinations to the Administrative Review Board ("ARB"), in accordance with the Policy's dictates requiring an appeal to exhaust all administrative remedies [73, ¶ 29]. Plaintiff has a high school degree and a homeland security training certificate

---

[1] The facts in Part I.A., as stated, are drawn from the allegations in Plaintiff's Amended Complaint [11], but the facts in Part I.B. are drawn from the moving party's Local Rule 56.1(a) Statement of Amended Material Facts Without Genuine Dispute ("SOAMF") and the opposing party's Local Rule 56.1(e) Response. In response to a motion for summary judgment, the Court must base its decision on the material facts without genuine dispute and cannot presume that the allegations of the Amended Complaint are true. See Part II.A. for an explanation of how Local Rules 56.1(a) and (e) support the Court's review of a Rule 56 Motion for Summary Judgment such as the one filed by Defendant Evans [56].

from Job Corps. [*Id.*, ¶ 27], so it is reasonable to assume that he can read and understand the Inmate Handbook's Grievance and Appeal requirements for administrative exhaustion, a fact reflected by his previous grievance filings and appeals [*Id.*, ¶ 33].

The record contains three grievances related or arguably related to the August 2 stabbing incident. None of these three grievances alleges that any correctional officer was deliberately indifferent to or failed to protect Plaintiff from the assault by his cellmate on August 2, 2017, and there are no missing grievances related to Officer Evans [*Id.*, ¶ 30].

1. The August 8, 2017 Grievance

On August 8, 2017, Plaintiff filed his 12th grievance with Cook County Department of Corrections ("CCDOC") officials, based on the August 2 Incident (the "August 8 Grievance"), as alleged above. The Grievance Policy states that any prisoner grievances must be filed with the CCDOC within 15 days from the incident giving rise to the grievance. Therefore, Plaintiff's August 2 Grievance, filed on August 8, was timely. The August 8 Grievance, however, did not recount the facts alleged in the Amended Complaint, as stated above, with one minor exception. The August 2 Grievance expressly stated:

> "Now I have been asking for a month to have my phone voice recognition reset because my sister is all I have since my mother died 2 years ago and I can't talk to my sister do to the fact that the voice recognition doesn't recognize my voice! The reason I'm Grievancing this is I feel every time I ask the white shirts they refuse to do [their] job to help me so it's like there say ---- my sister the only family I have left. Now I don't cause any trouble for no employee here but if they continue to ignore me I be force to take legal action when I talk to my lawyer to see what step to take along wit[h] the lawsuit from me getting stabbed extremely close to my eyeball."

[73 (Plaintiff's SOAMF), ¶ 4].

The Grievance Policy requires CCDOC officials to do one of two things in response to a timely filed grievance: (1) CCDOC officials must make a merits determination regarding the grievance in writing and return this written determination ("response") to the prisoner within 15

5

days from the date the grievance was submitted; or, alternatively, (2) if a merits determination for a grievance cannot be made in writing or the response cannot be returned with the specified 15 days, the CCDOC must inform the prisoner who submitted the grievance within that time period of the delay. The Grievance Policy does not define "merits determination." However, in *Boyd*, Judge Seeger adopted the persuasive and common sense view that a merits determination is simply one that ends the inquiry by denying the requested relief, granting the requested relief, or rejecting the grievance on procedural grounds, such as untimeliness.

      The CCDOC's response to the August 8 Grievance, dated September 9 and received by Plaintiff on September 17 ("September 17 Response") included a merits determination because it granted Plaintiff's request to have his voice recognition reset [73, at ¶ 5]. This determination was a response to Plaintiff's articulated grievance in the first two and (arguably) all three sentences of the August 8 grievance. The first and second sentences of the grievance related to his inability to make a phone call to his sister. Fairly read, the second sentence—which includes the grievance that "white shirts refuse to do [their] job to help me"—refers to Plaintiff's request for help to reset the voice recognition system and nothing else. Given the positive response to his voice recognition request in the September 17 Response, there was no need for Plaintiff to appeal this determination to the ARB to exhaust administrative remedies. The September 17 Response, however, did not address the last sentence of his August 8 Grievance, which stated:

> Now I don't cause any trouble for no employee here but if they continue to ignore me I be force to take legal action when I talk to my lawyer to see what step to take along wit[h] the lawsuit from me getting stabbed extremely close to my eyeball."

[73, at ¶ 5]. Plaintiff failed to appeal the September 17 Response, as required by the Grievance Policy, and thereby forfeited his right to seek administrative exhaustion of any part of the August 8 Grievance, including any silence regarding the last sentence's reference to the stabbing incident.

2. The September 15 Grievance

Before receiving the September 17 Response, Plaintiff filed a second grievance, recounting the events of the August 2 attack by his cellmate, including the stabbing. But in this second grievance he made no mention of Defendant Evans' inaction or Plaintiff's requests for help. [73, ¶ 6]. The September 15 grievance states: "This grievance is to follow up on the grievance I submitted [o]n 8-7-2017[.]"[2] And "…towards the end when I mention the lawsuit I am going to file on this county because I got stabbed extremely close to my eye socket. On August 1, 2017 at 10:30 pm I was watching TV … [When] the show went off at 11 pm … I immediately was blindsided by my cellmate with a bunch of knees … D[ue] to the blows to my face I suffered … I'm suffering from vision loss in the right eye." [17, ¶ 16].

On September 26, 2017, CCDOC sent to Plaintiff its response denying the September 15 Grievance as untimely because "the grieved issue did not occur in the last 15 days". [*Id.*, ¶ 17]. This procedural denial on grounds of untimeliness was a merits decision that required an appeal to the Administrative Review Board (ARB) to exhaust administrative remedies. Plaintiff did not, however, appeal the denial to the September 15 Grievance, as required by the Grievance Policy.

3. The October 25, 2017 Grievance

On October 25, 2017, Plaintiff filed a grievance with CCDOC stating: "I wrote and sent in a medical slip [stating] how my wrist also hurts my knuckle on my pinky … from the blind-sided fight with my old cellmate Reza." [17, ¶ 19]. On December 12, 2017, "Cermak staff responded to Plaintiff' denying the October 25 Grievance, stating that Plaintiff previously received medical care [*Id.*, ¶ 20]. Although Plaintiff did not appeal the August 8 and September 15 Grievances, he *did appeal* the October 25 Grievance [*Id.*, ¶ 21], which is one of the reasons why the Court denied the

---

[2] Defendant Evans notes that Plaintiff incorrectly dated his August 2017 Grievance as filed on August 7. [60, at 3, n.3].

7

motions to dismiss filed by Defendants Dart [19] and Cook County [27] earlier in these proceedings.

## II. Procedural History & Legal Standards

Plaintiff, acting *pro se*, filed an Original Complaint [1] on July 30, 2019. Subsequently, Plaintiff filed a motion for attorney representation [4], which the Court granted [5]. On October 25, 2019, Plaintiff filed an Amended Complaint [11] with the help of counsel. In lieu of filing answers, Defendants Dart and Cook County each filed a motion to dismiss Count II [19, 27], which alleged a claim under *Monell* for inadequate medical treatment for the stab wound Plaintiff suffered on August 2, 2017. On September 21, 2020, the Court denied both motions [51]. Defendant Evans then filed this *Pavey* motion for summary judgment [59].

### A. *Rule 56 Summary Judgment*

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence would permit a reasonable factfinder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted.) The Northern

District of Illinois' Local Rule ("Local Rule" or "L.R.") 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). L.R. 56.1(a). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." L.R. 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); L.R. 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3).

B.  *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act requires an inmate who brings a civil rights complaint to first exhaust his administrative remedies within the correctional system. 42 U.S.C. § 1997e(a); see, *e.g.*, *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005); *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). This requirement is mandatory; "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). The PLRA requires exhaustion and the Seventh Circuit requires "strict compliance" with the grievance process. *Dole v. Chandler*, 438 F.3d 805, 808 (7th Cir. 2006).

The administrative process, which typically involves the filing of a grievance, is intended to allow correctional facilities "to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). To fulfill

the exhaustion requirement, an inmate must comply with the procedures and deadlines established by the correctional facility's policies. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). Here, the CCDOC's Grievance Policy required a timely grievance (within 15 days of the complained of conduct or incident) and an appeal within 15 days of receiving the CCDOC's written Response (with a merits determination regarding the grievance). Because failure to exhaust is an affirmative defense, the burden is on the defendant to demonstrate that the inmate failed to exhaust. *Maddox*, 655 F.3d at 720.

**III.     Analysis**

Defendant advances two arguments regarding Plaintiff's failure to exhaust his administrative remedies. First, Defendant argues that Plaintiff did not exhaust because he "did not file a grievance about Officer Evans' conduct." [60 (Memo in Supp. Of MSJ), at 7]. Second, Defendant argues that "[e]ven if this Court should find that [the First Grievance] is sufficiently related to Officer Evans' conduct," Plaintiff still did not exhaust "because [he] did not appeal that grievance." *Id.* at 10-11. The Court agrees with both arguments.

    A.    *Plaintiff's Grievances Do Not Satisfy the Notice Requirements of the PLRA or the CCDOC Grievance Policy.*

Failure to exhaust administrative remedies is a fatal flaw that precludes a prisoner plaintiff from proceeding with legal action, because "the primary purpose of a grievance is to alert prison officials to a problem." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (internal citations and quotation marks omitted). See also 42 U.S.C. § 1997e(a). Thus, the prisoner's grievance must include enough information to alert the prison of the wrong for which the prisoner seeks redress. The measure of "enough information" does not require precision. For example, the name of a particular officer who the prisoner seeks to report need not be included in the grievance. *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). But the information provided by the prisoner must be

sufficient, even when read generously and liberally by the CCDOC (and a reviewing court), to alert the CCDOC of the prisoner's complaint in a way that produces an understanding of the subject matter grieved and the remedy sought to address the grievance. See, *e.g.,* 42 U.S.C. § 1997e(a) (requiring sufficient facts and information for prison officials to "object intelligibly to some asserted shortcoming").

In the instant case, the first two sentences of Plaintiff's August 8 Grievance addressed only the problem he was having calling his sister because the prison's voice recognition system was not working and the "white shirts refuse to do [their] job to help me …." [73, ¶ 4]. Fairly and generously read, the first two sentences relate only to the Plaintiff's inability to make a phone call to his sister and his grievance that the "white shirts" won't help him fix this problem.

The third sentence of the August 8 Grievance is more ambiguous. There, Plaintiff states:

> Now I don't cause any trouble for no employee here but if they continue to ignore me I be force to take legal action when I talk to my lawyer to see what step to take along wit the lawsuit from me getting stabbed extremely close to my eyeball."

[73, ¶ 4]. A fair reading of the third sentence is that Plaintiff is not trying to cause trouble for any white shirt employees, but if these employees "continue[d] to ignore [him]" then he would be "forced to take legal action" when he talks to his lawyer "to see what step to take…." [*Id.*]. This reading is also contextually consistent with the first two sentences, because Plaintiff is referring to talking to his lawyer – someone outside the prison system with whom he can speak only by using the phone and, thus, the voice recognition system. That said, the last line of the third sentence does not address the voice recognition system; and its only common link is the reference to a lawsuit (second clause), which follows from his reference to a legal action in the first clause. The phrase "along with" plainly implies more than one lawsuit or legal action.

11

Based on the plain meaning of the words he used, the Court concludes that Plaintiff was threatening to file a second round of litigation based on the voice recognition system issue. In other words, there appears to be a threat of potential or additional litigation over Plaintiff "getting stabbed extremely close to my eyeball" on August 2, that is distinct from the grievance he had about the voice recognition system, which he includes as an afterthought at the end of his August 8 Grievance. The August 8 Grievance, in the Court's view (and also apparently that of the CCDOC), raised an entirely unique issue related to the voice recognition system and about not being helped by white shirts with that issue, about which Plaintiff threatens legal action the next time he talks to his lawyer. This grievance, even when generously construed, simply does not provide information sufficient to put the CCDOC on notice about any grievance related to the stabbing incident. At most, it put CCDOC on notice that Plaintiff intended to file a lawsuit.

Interpretation of the last clause of the third sentence, therefore, yields an entirely reasonable and fair inference that Plaintiff did not grieve the stabbing incident in the August 8 Grievance, but merely foreshadowed the grievances he would later file on September 15 and October 25 regarding the stabbing assault itself (September 15 Grievance) and inadequate medical care (October 25), which became his claim in Count II of his Amended Complaint. Certainly, the CCDOC's complete silence regarding his reference to the stabbing incident reflects that they did not understand Plaintiff's August 8 Grievance to be raising that issue. In any event, as discussed in greater detail below, even if under the most generous reading imaginable is given to the August 8 Grievance, under which it is read to notify CCDOC that Plaintiff sought an investigation of both the voice recognition issue and the stabbing incident, Plaintiff's failure to appeal the CCDOC's September 17 Response was fatal to any attempt to resist Evans' failure to exhaust argument.

Notably, the October 25 Grievance regarding inadequate medical attention that was denied by the CCDOC, on grounds that Plaintiff had been treated before the grievance response was due, *was appealed*. In doing so, Plaintiff exhausted his administrative remedies and preserved Count II as a claim for this civil suit. Significantly, however, Defendant Evans is not named as a party to Count II but only to Count I.

> C. *Even if the August 8 or September 15 Grievances Properly Notified CCDOC of the Stabbing Incident, These Grievances Did Not Complain About A Prison Guard's Deliberate Indifference to Plaintiff's Assault or Failure to Protect Plaintiff from the Assault.*

Another substantive problem Plaintiff faces is that neither the August 8 nor the September 15 Grievances can fairly, generously, or reasonably be read as notifying CCDOC that a prison guard knew about the alleged threat or the actual assault and did nothing about it. Plaintiff's Amended Complaint pleads a deliberate indifference theory under § 1983, but the briefs discuss a failure to protect (these are two different theories). Regardless, to assign legal culpability to Defendant Evans in this case, the PLRA and Grievance Policy require *both* a "heads up" in one of the grievances at issue *and* a follow up appeal to the ARB alerting them that a prison guard was deliberately indifferent, even if the PLRA has been interpreted not to require a prisoner to name names. Plaintiff did not ever mention the involvement, indifference or failure to act by prison guards with regard to the stabbing incident in any of his grievances. His references to "white shirts" not helping him was, as interpreted, tied to the voice recognition system issue. And his continued reference to employees, for whom he did not wish to make trouble but who continued to "ignore" him, is not related to any subject other than the threat of a lawsuit about the voice recognition system.

Plaintiff's counsel encourages the Court to read the August 8 Grievance more generously, to include the reference to CCDOC employees "ignoring" him as being linked to a lawsuit about

13

the stabbing incident, citing the case of *Riccardo v. Rausch*, 375 F.3d 521 (7th Cir. 2004), in which the plaintiff mentioned that another inmate had committed a rape and that "the administration don't do there [sic] job." *Riccardo*, 375 F.3d at 524. The Court determined that "a generous construction of [Riccardo's] grievance would have induced the prison to consider the possibility that the guards could have prevented [the] assault." *Id.* As such the Court concluded that "Riccardo exhausted the administrative process." *Id.* However, the Court also noted that Riccardo's grievance was "at the border of intelligibility" and that "it is hard to imagine much less that a prisoner could do and still alert the prison." *Id.*

Unlike *Riccardo*, where the grievance focused on the sexual assault and commented on related administrative shortcomings, Plaintiff's August 8 Grievance focused on a complaint about the voice recognition system and only mentioned the physical assault in passing. When Plaintiff wrote, "the reason I'm Grievancing this is I feel every[]time I ask the white shirts they refuse to do [their] job," Plaintiff was referring to the reason for filing his grievance about the failure of prison officials to reset his voice recognition system. [73 (Plaintiff's SOAMF), at 11, ¶ 4] This interpretation is supported by the rest of the sentence, which laments that "it's like there say – my sister the only family I have left." *Id.* Even applying a generous interpretation of Plaintiff's grievance leads to the conclusion that Plaintiff had an issue with prison officials' unresponsiveness, especially as it pertained to resetting his voice recognition system. It does not stand to reason that Plaintiff's August 8 Grievance communicated discontent with prison officials lack of response to his request for help on the night of the August 2 attack by his cellmate. Instead, the alleged role Defendant Evans is now alleged to have played in the threat of assault and the actual stabbing as it played out on August 2 seems very much like a pre-litigation after-thought.

14

The PLRA and the Grievance Policy, together with many federal cases addressing the requirements of both, make clear that Plaintiff's claim against Defendant Evans was not administratively exhausted and cannot serve as the basis for a claim in this civil action. The failure to exhaust is based first on the fact that he never filed a grievance about Defendant Evans – at any time relevant to this proceeding. The failure to exhaust is also reflected by the fact that Plaintiff did not file an appeal of either the August 8 Grievance or the September 15 Grievance, as required by the Grievance Policy. Even if Plaintiff was confused by the Response to the August 8 Grievance, as alleged (believing that the CCDOC might still have been investigating the third sentence reference to the stabbing) the CCDOC's Response to the September 15 Grievance, received by Plaintiff on October 9, 2017, clearly denied on procedural grounds (untimeliness) Plaintiff's attempt to grieve the stabbing incident allegations. This kind of denial also must be appealed to preserve the right to litigate any civil rights claims related to it in federal court. See *Boyd*, 2020 WL 6381367 at * 5-6.

    D.    *Plaintiff's Arguments Are Unavailing*

Plaintiff's arguments to the contrary are not persuasive. Any suggestion that Plaintiff was confused about the Policy regarding how to appeal misses the mark because the undisputed facts show that he previously used the grievance and appeal process exactly as they were outlined in the Policy. Plaintiff's argument that the September 15 Grievance was an appeal of the August 8 Grievance is also falls short because an appeal is defined in the Grievance Policy as a request by Plaintiff to overturn the merits determination of the CCDOC from the original grievance response. Here, there was no response or merits determination to appeal as of September 15; Plaintiff did not receive the Response until September 17; and, regardless, the September 15 Grievance was

filed with the CCDOC, not the ARB, as required by the Grievance Policy that Plaintiff previously understood and complied with at least four times prior to this date.

Finally, Plaintiff contends that he adequately grieved his claim against Officer Evans and that Defendant overstates the level of detail required to do so. Noting that the PLRA merely requires that a grievance "object intelligibly to some asserted shortcoming," Plaintiff argues that he was not required to identify Evans by name or to specifically mention Evans failure to protect him. [72 (Plaintiff's Memo in Opp. To MSJ), at 6-7 (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002))]. Although Plaintiff is correct that the Grievance Policy does not require specificity, Plaintiff's grievance should have, at minimum, "alert[ed] prison officials to a problem." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). The August 8 Grievance did that— but the problem identified related to the failure to reset Mr. Howard's voice recognition system, not Officer Evans' (or any other officer's) conduct on an earlier date on a different problem.

> E. *Even if the August 8 or September 15 Grievances Properly Notified CCDOC of Plaintiff's Claim Against Defendant Evans, His Failure to Appeal Either Grievance Eliminates Any Administrative Exhaustion Argument.*

Defendants further argue that "[e]ven if this Court should find that [the August 8 Grievance] is sufficiently related to Officer Evans' conduct," Plaintiff still did not exhaust "because [he] did not appeal that grievance." *Id.* at 10-11. "The CCDOC Grievance Procedure requires inmates fill out and submit an Inmate Grievance Form within fifteen (15) days of the alleged conduct, incident or offense, and to appeal the grievance response to exhaust administrative remedies within 15 days from receipt of the grievance response. Filing an appeal of a grievance response is required in order to exhaust an inmate's administrative remedies." [61-5 (Decl. of John Mueller), at 3, ¶ 8].

16

Plaintiff advances three counter arguments. *First*, Plaintiff argues that "the CCDOC's violation of its policy relieved Mr. Howard of Any Obligation Under the Policy to appeal the untimely denial of his grievance." [72 (Plaintiff's Memo in Opp. To MSJ), at 14 (citing *Cleveland v. County of Cook*, 2009 WL 3156742, at *3 (N.D. Ill. Sept 25, 2009) ("the exhaustion requirement is satisfied once the prison fails to reply to a timely-filed grievance within the time frame specified by the administrative rules.")]. *Second*, Plaintiff argues that "Mr. Howard's [Second Grievance] was effectively an appeal regarding the [First Grievance]." [72 (Plaintiff's Memo in Opp. To MSJ), at 15]. *Third*, Plaintiff argues that even if Mr. Howard is not "excused from [exhausting his administrative remedies] by the CCDOC's violation of its Policy and even if his second grievance is not deemed to have been an appeal of his [First Grievance]," "the appeal provision in the Policy is confused and confusing, and fails to adequately inform inmates of the need to file an appeal if they wish to preserve their ability to file a lawsuit." [72 (Plaintiff's Memo in Opp. To MSJ), at 16-17].

The first argument is essentially that the CCDOC waived the administrative exhaustion requirement when it failed to comply with its own obligations under the Policy. The Court disagrees. The PLRA governs the issue of administrative exhaustion and, although it directs that the prison's grievance policy should be strictly enforced, the PLRA does not authorize the Court to waive any administrative exhaustion requirements.

The second argument is also unavailing. The September 15 Grievance was not an appeal. It was submitted to the CCDOC, and it made new allegations about the stabbing that were not contained in the August 8 Grievance. At most the September 15 Grievance functioned as an amendment or reassertion of a prior grievance, perhaps to remind the CCDOC that Plaintiff was waiting for an overdue Response. But it was not an appeal either in substance or in form.

17

The final argument about the confusing language of the Grievance Policy regarding the necessity of appeal to preserve the right to file a civil suit also is not persuasive. The undisputed facts in the record reflect that, prior to the August 8 Grievance, Plaintiff Howard filed at least 11 grievances and appealed 4 of them to the ARB. *Id.*, at 9, ¶ 29. Plaintiffs note that "Paragraph 701.4(i) of the CCDOC's Policy states that '[a]n inmate may appeal a grievance response if the inmate deems the response to be unsatisfactory in order to exhaust his/her administrative remedies under this procedure." [73 (Plaintiff's SOAMF), at 12, ¶11]. Although the permissive language may be confusing to some, given this record, the Court cannot reasonably infer any confusion on Plaintiff's part.

### IV.     Conclusion

For the reasons stated above, Defendant Evans' Motion for Summary Judgment [59] as to Count I of the Amended Complaint is granted. A final judgment as to the claims against Defendant Evans will be entered pursuant to Fed. R. Civ. P. 54(b) and he will be terminated as a party to this action. The remaining Defendants are instructed to file a Status Report regarding the progress of this case with respect to Count II of the Amended Complaint by April 15, 2022.

Dated: March 31, 2022

_____
Robert M. Dow, Jr.
United States District Judge